```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID CHOJNACKI,

                Plaintiff,       1:18-cv-00610-MAT
                                 DECISION AND ORDER
                -v-

Commissioner of Social Security,

                Defendant.
_____
```

## INTRODUCTION

David Chojnacki ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his application for Disability Insurance Benefits ("DIB"). Docket No. 1. The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Docket Nos. 12, 14, 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted, and Defendant's motion is denied. The Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further administrative proceedings.

## PROCEDURAL BACKGROUND

On November 11, 2014, Plaintiff protectively filed an application for DIB, alleging disability as of January 2, 2013, due

to the following impairments: depression; bulging discs; a partially removed disc; drop foot; cartilage damage in his hips; tendinitis in his right elbow; and arthritis. Administrative Transcript ("T.") 170, 230-31. The claims were initially denied on December 30, 2014. T. 170, 240-44. At Plaintiff's request, a video hearing was conducted on December 1, 2016, by administrative law judge ("ALJ") Benjamin Chaykin. T. 170, 183-229. Plaintiff appeared in Buffalo New York, and the ALJ presided over the hearing from Alexandria, Virginia. *Id*. The ALJ issued an unfavorable decision on April 3, 2017. T. 167-79. Plaintiff appealed the decision to the Appeals Council, which denied his request for review on March 26, 2018, making the ALJ's decision the final determination of the Commissioner. T. 1-4. This action followed.

**THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). The ALJ initially found that Plaintiff met the insured status requirements of the Act through September 30, 2019. T. 172. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2013, the amended alleged onset date. *Id*.

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: lumbar spine degenerative disc disease status post remote laminectomy; obesity; right elbow

-2-

tendinitis; left bicep tendon tear; cervical spine degenerative disc disease; and right shoulder rotator cuff tear. *Id*. The ALJ also determined that Plaintiff's medically determinable impairments of hypertension, history of carpal tunnel syndrome status post release surgery, peripheral nerve disease, bilateral hip degenerative joint disease, gout, obstructive sleep apnea, migraine headaches, deep vein thrombosis of the left lower extremity, affective disorder, and left foot osteoarthritis did not cause significant work-related functional limitations and thus was non-severe. T. 173.

At step three, the ALJ found that Plaintiff's impairments did not singularly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 176. The ALJ specifically considered Listings 1.02 and 1.04, as well as SSR 02-1p, as it relates to Plaintiff's obesity. *Id*.

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that he: "cannot climb ladders, ropes, and scaffolds, but he can occasionally climb ramps and stairs. He can occasionally stoop, crouch, kneel, and crawl. [Plaintiff] can frequently reach bilaterally and can occasionally operate foot controls with the left lower extremity." *Id*.

At step four, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a collections clerk. T. 178. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 179.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ erred by assessing an RFC without any mental limitations; (2) the ALJ's finding that Plaintiff's mental impairments were non-severe is not supported by the record; (3) the ALJ erred in his evaluation of the opinion of Plaintiff's treating psychologist, Ismael Gonzalez, Psy.D.; and (4) the RFC finding that Plaintiff can "frequently" reach bilaterally is not supported by the record. *See* Docket No. 12-1 at 19-30. For the following reasons, the Court finds that the ALJ erred in his evaluation of opinion evidence offered by Dr. Gonzalez and in his assessment of Plaintiff's physical RFC. Accordingly, the decision of the Commissioner is reversed, and the case is remanded for further administrative proceedings.

**I.      Evaluation of Dr. Gonzalez's Opinion**

Plaintiff argues that the ALJ erred in assessing the opinion of his treating psychologist, Dr. Gonzalez. *See* Docket No. 12-1 at 23. Defendant responds that the ALJ gave "good reasons" for affording Dr. Gonzalez's opinion little weight. Docket No. 14-1 at 12-13.

The treating physician rule requires an ALJ to give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R.

§ 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's medical opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotations, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6). "The regulations also specify that the Commissioner 'will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion.'" *Halloran*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2)) (alterations in original).

Plaintiff began treating with Dr. Gonzalez, a staff psychologist at the Veterans Health Administration of Western New

York, on June 14, 2016. T. 1067, 1069. On November 17, 2016, Dr. Gonzalez completed a "Medical Treating Source Statement - Mental Impairment," opining on Plaintiff's mental impairments. Dr. Gonzalez found that Plaintiff had a rating of "Poor/None" (meaning "[c]omplete loss of ability to perform the named activity in regular, competitive employment and in a sheltered work setting; could do so only to meet basic needs at home") in the following categories of mental functioning: the ability to remember work-like procedures; the ability to understand and remember very short and simple instructions; the ability to carry out very short and simple instructions; the ability to maintain attention for extended periods of two hour segments; the ability to maintain regular attendance and be punctual within customary tolerances; the ability to sustain ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being (unduly) distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, which requirements are usually strict; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to respond appropriately to changes in a routine work setting; and the ability to be aware of normal hazards and take appropriate precautions. T. 1067-68. Plaintiff had a rating of "Fair" (defined as "[s]ubstantial loss of

ability to perform the named activity in regular, competitive employment and, at best, could do so only in a sheltered work setting where special considerations and attention are provided"), in the following areas of mental functioning: the ability to ask simple questions or request assistance, and the ability to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes. *Id*.

Dr. Gonzalez explained the assessment of Plaintiff, including that Plaintiff exhibits a depressed mood nearly every day; has a sleep disturbance that impacts his ability to focus and concentrate; exhibits "psychomotor retardation," resulting in a diminished ability to think or concentrate, and indecisiveness; and experiences a loss of energy. T. 1068. Dr. Gonzalez opined that these symptoms "cause clinical significant distress or impairment in social, occupational, or other areas of functioning. This is in my opinion aggravated by chronic pain issues in addition to psychological conditions." *Id*.

At step two of the sequential evaluation, the ALJ found that Plaintiff's affective disorder was non-severe. T. 173. The ALJ discussed the opinion offered by Dr. Gonzalez, but afforded it only "little weight," because "the extreme limitations identified are not supported by the medical evidence of record." T. 175. The ALJ provided the following reasoning:

> For instance, prior to June 2016, the claimant was working part-time as a taxi driver, which necessitated interacting with the public as well as making (driving-

> related) decisions and prolonged concentrating. More recent treatment notes are also inconsistent with this opinion; as noted above, they record the claimant's appropriate grooming, active participation in group therapy, and goal-directed though process. Dr. Gonzales' opinion is also inconsistent with the other opinions of record, including the opinions provided by the psychological consultative examiner and State agency psychological consultant, who are more familiar with the disability program.

*Id*. The ALJ gave "great weight" to the December 2014 opinions of Dr. Santarpia, the consultative examiner, and M. Marks, the state agency psychological consultant. T. 175-76.

The Court is cognizant that "the opinions of a consultative examiner may be provided great weight and establish substantial evidence supporting the ALJ's decision." *Donaldson v. Berryhill*, No. 2:17-cv-2000(ADS), 2018 WL 4845740, at *8 (E.D.N.Y. Oct. 4, 2018). Further, "[i]f the consultative examiner's opinion is more consistent with the medical evidence than a treating physician's opinion, the ALJ may accord the consultative examiner's opinion greater weight." *Id*.

Despite the fact that an ALJ may afford greater weight to the opinion of a consultative examiner than the opinion of a treating physician, in this case, the ALJ erred by giving great weight to the opinions of Dr. Santarpia and M. Marks, and only little weight to the opinion of Dr. Gonzalez. Specifically, the ALJ failed to give "good reasons" for rejecting Dr. Gonzalez's opinion. The Court notes that "'a reason . . . that relies on a mischaracterization of the record cannot be a good reason [for

-9-

disregarding a treating source's opinion].'" *Lloyd v. Commissioner*, 335 F. Supp. 3d 472, 479 (W.D.N.Y. 2018) (quoting *Wilson v. Colvin*, 213 F. Supp. 3d 478, 485 (W.D.N.Y. 2016)) (alternations in original). To that end, the ALJ points to Plaintiff's part-time work as a taxi driver as evidence contradicting Dr. Gonzalez's opinion. At the administrative hearing, Plaintiff testified that he worked twenty hours per week driving people to their medical appointments. T. 195-96. However, Plaintiff further testified that he could not continue in that position and left due to "physical [and] mental" reasons. T. 197. Plaintiff elaborated that he had trouble interacting with the individuals he drove, *see* T. 219-20, which is contrary to the ALJ's reasoning that Plaintiff's ability to work as a taxi driver demonstrated that he was able to concentrate, make decisions, and interact with the public. In other words, the ALJ mischaracterized Plaintiff's ability to perform his past work as a taxi driver. "This was improper and cannot constitute a good reason for rejecting the opinion of a treating physician." *Lloyd*, 335 F. Supp. 3d at 479.

The ALJ next refers to more recent mental health treatment notes, which document participation in group therapy and largely normal mental status examinations. *See, e.g.*, T. 1038-64. The Court has reviewed the medical records from Plaintiff's mental health treatment which, for purposes of this claim, date back to July 2014. T. 443. A July 2014 treatment note from the Buffalo VA

-10-

notes that Plaintiff received some mental health treatment for depression in 2010. T. 444. Plaintiff's medical records demonstrate that he consistently exhibited signs of depression, and was assessed by various providers with some form of depression, between 2014 and 2016. *See, e.g.,* T. 408-12, 425-28, 435-39, 799-800, 848, 862-63, 867-68, 888-89, 949, 950-52, 960, 1038-39, 1053, 1056, 1059, 1062-63. Treatment notes from Plaintiff's sessions with Dr. Gonzalez indicate ongoing symptoms of depression. T. 1038-39, 1053, 1056, 1059-60, 1062-63. While Plaintiff at times reported an improvement in symptoms, more recent treatment notes from November 2, 2016 state that Plaintiff was engaging in gambling, which caused financial stress. T. 1038. Dr. Gonzalez assessed Plaintiff's insight and judgment as "low" based on this behavior. T. 1039.

Finally, the ALJ noted that Dr. Gonzalez's opinion was inconsistent with the opinions of Dr. Santarpia and M. Marks, who she reasoned "are more familiar with the disability program." T. 175. This reasoning, standing alone, is contrary to the treating physician rule, which requires that the ALJ give controlling weight to the opinion of a treating physician, unless the ALJ is able to articulate "good reasons" for discounting the opinion. The articulation of "good reasons" is particularly important in cases involving mental health impairments:

> Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context

of mental health. When examining psychiatric or psychological evidence, it is important that greater weight be given to those physicians who have a relationship with the patient. The opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

*Richardson v. Astrue*, No. 09-CV-1841, 2009 WL 4793994, at *7 (S.D.N.Y. Dec. 14, 2009) (internal quotations and citations omitted). As explained above, the ALJ did not offer "good reasons" for discounting the opinion of Dr. Gonzalez.

The Court further notes that the opinions of Dr. Santarpia and M. Marks are from 2014, and are not as current as the opinion offered by Dr. Gonzalez. *See* T. 175-76; *see also Sabrina L. o/b/o T.L. v. Berryhill*, No. 1:17-cv-00542-CCR, 2018 WL 6521760, *10 (W.D.N.Y. Dec. 11, 2018). Due to this gap in time, Dr. Santarpia did not have the benefit of reviewing Dr. Gonzalez's treatment notes at the time she rendered her opinion. *See id.* at *11.

Dr. Gonzalez is the only treating source in the record who offered an opinion on Plaintiff's functional limitations resulting from his mental impairment. Dr. Gonzalez evaluated Plaintiff in-person on a regular basis, and his opinion as to Plaintiff's mental limitations is particularly restrictive. Despite this, the ALJ concluded that Plaintiff had <u>no</u> severe mental impairment and no mental limitations. The Court finds that the ALJ did not provide "good reasons" for discounting Dr. Gonzalez's opinion as to the severity of Plaintiff's mental impairments and resulting

-12-

limitations because the ALJ's rationale was largely based on a mischaracterization of the record and stale medical opinions from non-treating sources, one of whom did not even examine Plaintiff. Although Plaintiff had some normal mental status examinations, that is insufficient to rebut the properly supported, restrictive opinion from Plaintiff's treating psychologist, Dr. Gonzalez. In sum, the Court finds that the ALJ's assessment of Dr. Gonzalez's opinion is legally flawed and is not based on substantial evidence.

**II.      Assessment of the Physical RFC**

Plaintiff also argues that the assessed RFC, which requires him to "frequently" reach bilaterally, is not supported by the record. *See* Docket No. 12-1 at 28.

"When assessing a disability claim, an ALJ has the responsibility of determining a claimant's RFC based on all of the relevant medical and other evidence of record." *Mack v. Commissioner*, No. 1:18-cv-00265-MAT, 2019 WL 1994279, at *4 (W.D.N.Y. May 6, 2019) (citations omitted). "[T]he ALJ is required to articulate the reasons for the RFC determination, which 'must include a narrative discussion describing how the evidence supports each conclusion.'" *Quinto v. Berryhill*, No. 3:17-cv-00024(JCH), 2017 WL 6017931, at *5 (D. Conn. Dec. 1, 2017) (quoting SSR 96-8p, at *7)).

An RFC finding need not correspond to any particular medical opinion; rather, the ALJ must weigh and synthesize all evidence available to render an RFC finding that is consistent with the

-13-

record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also O'Neil v. Colvin*, No. 13-CV-575-JTC, 2014 WL 5500662, at *6 (W.D.N.Y. Oct. 30, 2014) ("the ALJ's RFC finding need not track any one medical opinion"). However, "[a]n ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.' This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC." *Quinto,* 2017 WL 6017931, at *12 (internal citations omitted).

In arriving at Plaintiff's physical RFC, the ALJ assessed opinion evidence from two sources. The ALJ explained:

> As for the opinion evidence, consultative examiner John Schwab, DO, examined the claimant in December 2014 and opined that the claimant *did not have any restrictions* based on the findings from that examination. This opinion is given little weight because additional medical evidence of record considered alongside the claimant's subjective complaints indicates a greater degree of limitation due to the combine[d] effect of the claimant's multiple impairments.
>
> Following the claimant's October 2015 motor vehicle accident, orthopedic treatment notes from Anish Patel, RPA-C with A. Marc Tetro, MD, include the opinion that the claimant was unable to work and would be considered disabled with regards to his usual occupation. This opinion is given little weight both because it is conclusory (*it does not address specific functional limitations*) and because it contemplates only the claimant's ability to perform the job he had at that time.

T. 178 (internal citations omitted) (emphasis added).

-14-

As noted above, an RFC finding need not correspond to any particular medical opinion. *See Cruz v. Colvin*, No. 3:13-cv-723(MAD/TWD), 2014 WL 4826684, at \*14 (N.D.N.Y. Sept. 29, 2014) (ALJ properly credited portion of consultative examiner's opinion, but discounted remainder of the opinion). However, in this case, the Court is unable to discern from the written determination how the ALJ arrived at the physical limitations assessed in the RFC, including that Plaintiff can perform bilateral reaching on a frequent basis.

The ALJ found that Plaintiff had multiple severe impairments, including back, shoulder, and arm impairments. T. 172. The ALJ also assessed several specific functional limitations in the RFC, including that Plaintiff cannot climb ladders, ropes, and scaffolds; can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl, and operate foot controls with the left lower extremity; and can frequently reach bilaterally. T. 176. However, as noted by the ALJ, Dr. Schwab found "no restrictions," and therefore he did not assess any functional limitations. *See* T. 178, *see also* T. 501. Similarly, the opinions offered by Dr. Tetro and RPA-C Patel do not include specific functional limitations. *See* T. 178. In other words, based on the discussion included in the written determination, it appears that the ALJ did not refer to any useful opinion evidence to help inform his assessment of Plaintiff's physical limitations. Rather, the ALJ assessed Plaintiff's physical RFC in a vacuum, *i.e.*, without any

medical opinion evidence as to how often Plaintiff is able to climb, stoop, crouch, kneel, crawl, operate foot controls, and reach. While the written determination includes a detailed discussion of the medical evidence relating to Plaintiff's lower back, cervical spine, shoulder, and right elbow impairments (*see* T. 177-78), this discussion is comprised of raw medical data, such as treatment notes, examinations, and imaging studies (*id.*). "Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC." *Spivey v. Commissioner*, 338 F. Supp. 3d 122, 128 (W.D.N.Y. 2018); *see also Quinto*, 2017 WL 6017931, at *12 ("[w]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities . . . the Commissioner may not make the connection himself.") (internal quotations and citation omitted) (alternations in original). It is not clear to the Court how the ALJ arrived at the specific functional limitations assessed in the RFC. On remand, should the ALJ assess specific physical functional limitations, he should work to further develop the record to obtain a useful medical opinion as to those limitations.

**III. <u>Plaintiff's Remaining Arguments</u>**   Finding remand necessary for the reasons explained above, the Court need not and does not

reach Plaintiff's remaining arguments concerning the step two analysis.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 12) is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order. The Commissioner's motion for judgment on the pleadings (Docket No. 14) is denied. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: November 5, 2019
Rochester, New York